```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF NEBRASKA
```

DEROISE J. WASHINGTON,      )        8:17CV6
                            )
            Plaintiff,      )
                            )        MEMORANDUM
      v.                    )        AND ORDER
                            )
DR. JACQUELINE ESCH,        )
                            )
            Defendant.      )
                            )

This matter is before the court on Defendant's motion for summary judgment, filed on October 10, 2017 (Filing No. 30). Plaintiff has not responded to the motion, which will be granted.

In accordance with the court's local rules, Defendants' brief (Filing No. 31) includes "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). This statement of material facts is supported by evidence in the record (Filing Nos. 31-1 to 31-19). Because Plaintiff has not responded to the motion for summary judgment, Defendants' statement of material facts is considered admitted. *See* NECivR 56.1(b)(1).

## *I. UNDISPUTED FACTS*

Plaintiff Deroise Washington was a pretrial detainee at the Douglas County Adult Detention Center ("Douglas County Jail") from October 23, 2016 to June 21, 2017. [Filing No. 31 at CM/ECF p. 4, ¶ 1.] This action was filed on January 26, 2017, while Plaintiff was a prisoner.[1] [Filing No. 1.] On or about June 21, 2017, Plaintiff

---

[1] On initial review of Plaintiff's Amended Complaint conducted pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the court determined that a plausible claim for relief

was released from the Douglas County Jail on bond. [Filing No. 31 at CM/ECF p. 11, ¶ 45.]

Defendant Jacqueline Esch is a medical doctor employed by Correct Care Solutions, LLC ("CCS"), a private corporation that provides medical services in correctional settings throughout the country. CCS has a contract with Douglas County to provide medical and mental health services at the Douglas County Jail. Esch is the medical director for CCS at the Douglas County Jail. [Filing No. 31 at CM/ECF pp. 4-5, ¶¶ 2-4.]

Plaintiff did not receive a medical intake interview on the day he arrived at the Douglas County Jail because of an incident in which a correctional officer believed that Plaintiff had violated correctional rules. Plaintiff did see a nurse on October 26, 2016, at which time he filled out a release, authorizing his pharmacy to release a list of his prescriptions to CCS. Dr. Esch evaluated Mr. Washington and directed that he be provided with a walker to assist with movement on or about November 1, 2016. [Filing No. 31 at CM/ECF p. 5, ¶¶ 5-7.]

Dr. Esch next saw Plaintiff on or about November 16, 2016. During that encounter, she discussed goals of reducing his blood pressure, improving his ability to ambulate with the walker, and decreasing his pain from arthritis. By the time Dr. Esch saw Plaintiff on November 16, 2016, a nurse-practitioner at the Douglas County Jail had directed that Washington continue to receive Amlodipine, a prescription medication to reduce blood pressure, for which he had a prescription prior to being incarcerated. [Filing No. 31 at CM/ECF pp. 5-6, ¶¶ 8-9.]

After the November 16, 2016 encounter, Dr. Esch wrote a prescription for Plaintiff to receive two other prescription medications to reduce blood pressure that

---

was stated against Defendant in her individual capacity for allegedly refusing to provide treatment for Plaintiff's known medical conditions. *See* Memorandum and Order entered on April 5, 2017 (Filing No. 16).

he had not been previously receiving. Plaintiff's blood pressure improved during his incarceration at the Douglas County Jail. [Filing No. 31 at CM/ECF p. 6, ¶¶ 10-11.]

During the November 16, 2016 visit with Dr. Esch, Plaintiff indicated he was suffering from pain due to arthritis. Dr. Esch explained to Plaintiff that while he could receive various non-steroidal anti-inflammatory drugs ("NSAIDs") such as Tylenol, ibuprofen, Mobic, and naproxen to relieve pain, he could not take such medications on a continuous basis. Dr. Esch explained that, in her medical judgment, continuous use of NSAIDs was not in Plaintiff's best interest because it could result in negative side effects such as gastrointestinal bleeding, damage to the liver and kidney, increased hypertension, increased risk of adverse cardiovascular events, and would actually worsen chronic pain. Plaintiff was given a limited quantity of Tylenol. [Filing No. 31 at CM/ECF p. 6, ¶¶ 12-15.]

When Dr. Esch saw Plaintiff again on November 29, 2016, he indicated he was suffering pain. Dr. Esch again explained to Plaintiff why she could not provide him with NSAIDs on a continuous basis, but did direct that he be provided with Mobic for 7 days. [Filing No. 31 at CM/ECF p. 7, ¶¶ 16-17.]

During his incarceration at the Douglas County Jail, Plaintiff was seen by mental health practitioners for various mental health issues including anxiety and depression. Because Plaintiff continued to complain of pain and because in her medical judgment, it was not in his best interest to receive NSAIDs on a continuous basis, Dr. Esch discussed with mental health practitioners at the Douglas County Jail whether Plaintiff could receive Cymbalta, an anti-depressant that has also been approved by the FDA for pain relief. [Filing No. 31 at CM/ECF p. 7, ¶¶ 18-19.]

Tawanda Mercer, a psychiatric Nurse Practitioner employed by CCS at the Douglas County Jail, told Dr. Esch that Plaintiff could be prescribed Cymbalta, but that he would need to discontinue taking Zoloft, another anti-depressant. On or about December 16, Anne Aloziem, a Nurse Practitioner, employed by CCS at the Douglas

County Jail, explained to Washington that if he was willing to discontinue Zoloft, he could receive Cymbalta, which could be effective in treating both depression and pain. [Filing No. 31 at CM/ECF pp. 7-8, ¶¶ 20-21.]

On or about January 4, 2017 Plaintiff was seen by Dr. Esch again. During this encounter, Plaintiff indicated he needed medication for pain, and Dr. Esch asked if he preferred Mobic, Tylenol, or ibuprofen. Plaintiff indicated he preferred Tylenol. Dr. Esch provided Plaintiff with a few days' worth of Tylenol, but advised him that she could not provide it on a continuous basis because of the negative side effects associated with continuous use of NSAIDs. [Filing No. 31 at CM/ECF p. 8, ¶¶ 22-25.]

On or about March 8, 2017, Plaintiff was seen by Dr. Esch again. During that visit, Plaintiff stated that he needed a wheelchair and that his primary care doctor had directed him to use one. Dr. Esch was not previously aware that Plaintiff had been directed to receive a wheelchair. In Dr. Esch's medical judgment, it was preferable for Plaintiff to ambulate with his walker to prevent blood clots or deconditioning. [Filing No. 31 at CM/ECF pp. 8-9, ¶¶ 26-29.]

During or shortly after the March 8, 2017 visit, Plaintiff retrieved a letter signed by his doctor from his cell indicating that he used a wheelchair. Dr. Esch had not previously seen the letter from Plaintiff. Dr. Esch advised Plaintiff that he should use the walker as much as possible, but that she would direct that a wheelchair be provided to him. Dr. Esch did, in fact, direct that Plaintiff be provided with a wheelchair, and this was accomplished. [Filing No. 31 at CM/ECF p. 9, ¶¶ 30-33.]

On or about April 7, 2017, Plaintiff was again seen by Dr. Esch and Plaintiff's pain was discussed again. During this visit, Dr. Esch again explained to Plaintiff that he could be provided with Cymbalta to address both his pain and depression, but that he needed to discontinue Zoloft first. It was Dr. Esch's understanding that Plaintiff was previously unwilling to discontinue Zoloft and to switch to Cymbalta. During this visit, Plaintiff indicated he would be willing to discontinue Zoloft and start Cymbalta.

Dr. Esch informed Plaintiff that she would speak to mental health practitioners about him discontinuing Zoloft and starting Cymbalta. After the April 7, 2017 visit, Dr. Esch did speak to mental health practitioners and Plaintiff discontinued taking Zoloft and started taking Cymbalta. [Filing No. 31 at CM/ECF pp. 9-10, ¶¶ 34-39.]

On or about May 25, 2017, Plaintiff was again seen by Dr. Esch. After Plaintiff reported that the Cymbalta was not helping with his pain, Dr. Esch advised him that it would take some time for the Cymbalta to help and that it should not be abandoned because it was not providing immediate assistance. Dr. Esch also said she would speak to mental health practitioners about increasing Plaintiff's Cymbalta. Following this encounter, Plaintiff's dosage of Cymbalta was increased. After this encounter, Dr. Esch also directed that Plaintiff be provided with Naproxen for 7 days. [Filing No. 31 at CM/ECF pp. 10-11, ¶¶ 40-44.]

Throughout his incarceration at the Douglas County Jail, Plaintiff was seen by providers other than Dr. Esch, including Aloziem and various nurses. Dr. Esch was aware of the fact that Aloziem and nursing staff were directing that Washington receive limited doses of NSAIDs to assist with complaints of pain. Plaintiff does not dispute that he received naproxen, ibuprofen, Tylenol and Mobic at various points during his incarceration. [Filing No. 31 at CM/ECF p. 11, ¶¶ 45-47.]

Plaintiff contends that Dr. Esch should have provided Plaintiff with certain treatments and medications during his incarceration at the Douglas County Jail. Dr. Esch did not direct that Plaintiff receive surgery on his hip. [Filing No. 31 at CM/ECF p. 11, ¶¶ 49-50.]

CCS staff at the Douglas County Jail do not have the capability of performing orthopedic surgery. Because inmates at the Douglas County Jail are usually incarcerated there for relatively short and unpredictable periods of time, it is generally not feasible or in the inmates' best interest to schedule a surgery during their incarceration at the Douglas County Jail. The policy of CCS regarding surgical

intervention at the Douglas County Jail is to refer inmates to an off-site provider for surgery if there is an emergent need. [Filing No. 31 at CM/ECF p. 12, ¶¶ 51-53.]

Prior to Plaintiff's incarceration at the Douglas County Jail, in August or September 2016, a doctor told Plaintiff that he would not perform surgery on Plaintiff's other hip until Plaintiff was willing to quit smoking. Plaintiff did not go forward with surgery as he decided to consider whether he was willing to quit smoking. Plaintiff's decision to decline surgery as he considered whether to quit smoking was reflected in medical records, which Dr. Esch reviewed shortly after Plaintiff arrived at the Douglas County Jail. Because Dr. Esch did not believe that Washington's hip presented an emergent need for surgery, she did not take steps to refer him to an orthopedic surgeon. [Filing No. 31 at CM/ECF p. 12, ¶¶ 54-57.]

Plaintiff asserts that he should have been provided with various medications while incarcerated at the Douglas County Jail. Dr. Esch obtained and reviewed a list of prescription medications Plaintiff was receiving prior to his incarceration. [Filing No. 31 at CM/ECF p. 13, ¶¶ 58-59.]

While Dr. Esch was aware that Plaintiff had a prescription to receive 325 mg of Hydrocodone three times a day, she did not direct that he receive it while incarcerated at the Douglas County Jail because, in her medical judgment, it was not in Plaintiff's best interest to receive Hydrocodone. Hydrocodone is a narcotic. In Dr. Esch's medical judgment, it may be appropriate for a patient to receive limited doses of Hydrocodone on a temporary basis while the patient is suffering from severe pain such as when a patient is immediately recovering from surgery. In Dr. Esch's medical judgment, it is not in a patient's best interest to receive Hydrocodone in regular doses for indefinite periods of time. Hydrocodone is highly addictive, and individuals that take it on a continuous basis develop a tolerance to the medication, which makes their pain symptoms worsen. [Filing No. 31 at CM/ECF pp. 13-14, ¶¶ 60-64.]

While Dr. Esch was aware that Plaintiff had a prescription to receive Tizanidine, she did not direct that Plaintiff receive Tizanidine while incarcerated at the Douglas County Jail because, in her medical judgment, it was not in Plaintiff's best interest to receive it. Tizanidine is a muscle relaxer. In Dr. Esch's medical judgment, Tizanidine is not appropriate for long-term usage. Long-term usage of Tizanidine can lead to addiction and other negative side effects including damage to the liver. In Dr. Esch's medical judgment, a muscle relaxer like Tizanidine would not have assisted with the symptoms Washington complained of. [Filing No. 31 at CM/ECF p. 14, ¶¶ 65-69.]

While Plaintiff contends he should have been provided with Gabapentin, Dr. Esch did not direct that he be provided with Gabapentin at the Douglas County Jail, because, in her medical judgment, it was not in his best interest to receive it. The list of prescriptions received from Plaintiff's pharmacy did not include Gabapentin. The list of prescriptions received from Plaintiff's pharmacy listed Lyrica, a medication similar to Gabapentin, but it indicated that Plaintiff had not picked up the Lyrica. Gabapentin is a medication that is medically approved to treat seizures and diabetic neuropathy. Gabapentin is very addictive and highly abused. Because there was no indication Plaintiff had seizures or diabetic neuropathy and because it is very addictive and highly abused, Dr. Esch did not believe it was appropriate for Plaintiff to receive Gabapentin. [Filing No. 31 at CM/ECF pp. 14-15, ¶¶ 70-75.]

While Dr. Esch and other providers at the Douglas County Jail provided Plaintiff with Tylenol, ibuprofen, Naproxen, and Mobic/Meloxicam at various times during his incarceration for pain, Dr. Esch did not direct that he be provided with these NSAIDs on a continuous basis, because, in her medical judgment continuous usage of NSAIDs was inappropriate. Negative side effects such as gastrointestinal bleeding, damage to the liver and kidneys, and increased risks of hypertension and adverse cardiovascular effects are associated with continuous usage of NSAIDs. Chronic use of NSAIDs will worsen pain symptoms as the body develops a tolerance to them. [Filing No. 31 at CM/ECF p. 15, ¶¶ 76-78.]

At various times during his incarceration, Plaintiff asked Dr. Esch about receiving an oxygen tank while sleeping. Dr. Esch tested his oxygen levels on several occasions, and they were consistently normal. On several occasions, Dr. Esch informed Plaintiff that if he would like to have his oxygen levels tested while sleeping, that could be done in the jail's infirmary, but each time, Plaintiff declined. [Filing No. 31 at CM/ECF p. 16, ¶¶ 79-81.]

## II. STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion" Fed. R. Civ. P. 56(a).

In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

The moving party bears the burden of showing there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

### *III. DISCUSSION*

This is an action brought under 42 U.S.C. § 1983, which provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. The court construes Plaintiff's Amended Complaint as alleging a Fourteenth Amendment claim based on allegedly inadequate medical care when Plaintiff was a pretrial detainee at the Douglas County Jail. To prevail on this claim, Plaintiff must show that the alleged deprivation of his rights was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Dr. Esch does not deny she was a person acting under color of state law. She instead argues there was no constitutional violation.[2]

Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as convicted prisoners receive under the Eighth Amendment. *Davis v. Oregon Cnty.*, 607 F.3d 543, 548 (8th Cir. 2010). To prevail on an Eighth or Fourteenth Amendment claim based on allegedly inadequate medical care, an inmate must show that the defendant was deliberately indifferent to the inmate's serious medical needs. *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011).

---

[2] Dr. Esch also asserts a qualified immunity defense, while acknowledging that the majority of courts have ruled that medical professionals employed by private corporations to provide medical care in a correctional setting are not entitled to the protections of qualified immunity. *See, e.g., McCullum v. Tepe*, 693 F.3d 696 (6th Cir. 2012). Because the evidence does not support a finding that Dr. Esch violated a statutory or constitutional right, there is no need to consider whether she can claim qualified immunity and, if she can assert this defense, whether the right was clearly established at the time of the challenged conduct.

"Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Rellergert by Rellergert v. Cape Girardeau Cnty.*, 924 F.2d 794, 796 (8th Cir. 1991). Deliberate indifference "is a difficult burden for a plaintiff to meet." *Id.* "The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1118 (8th Cir. 2007).

"To succeed on an Eighth Amendment claim in this context, a plaintiff must prove two elements." *Letterman v. Does*, 789 F.3d 856, 861-62 (8th Cir. 2015). "First, a plaintiff must show there was a substantial risk of serious harm to the victim, an objective component." *Id.* "Second, a plaintiff must show that the prison official was deliberately indifferent to that risk of harm, a subjective component." *Id.* Under this subjective prong, the evidence must show that the defendant "recognized that a substantial risk of harm existed and knew that their conduct was inappropriate in light of that risk." *Id.* at 862 (quoting *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (emphasis in original)). After showing knowledge, the plaintiff then must demonstrate the actor deliberately disregarded that risk. *Id.*

For a claim of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct. *Id.*

### A. Dr. Esch's decision to not prescribe various prescription medications does not constitute deliberate indifference.

Plaintiff cannot show that Dr. Esch acted with deliberate indifference when she declined to provide the medications he desired. Dr. Esch did not provide Hydrocodone

-10-

because it is a highly addictive narcotic, results in the worsening of pain symptoms, and, in her medical judgment, it is not in a patient's best interest to receive it in regular doses for indefinite periods of time. She did not provide Tizanidine because, in her medical judgment, it is not appropriately used on a long-term basis, it is addictive, has negative side effects, and would not have assisted with the symptoms Plaintiff complained of. She did not provide Gabapentin because there was no indication Plaintiff suffered from the conditions Gabapentin is medically approved to treat, because there was no indication he had previously been prescribed Gabapentin, and because it too is addictive and highly abused. Dr. Esch did provide Plaintiff with Mobic/Meloxicam and other NSAIDs at various times for pain, but she did not provide them on a continuous basis. That decision was also a decision based on her medical judgment, specifically, that continuous usage of NSAIDs was not appropriate because of negative side effects such as gastrointestinal bleeding, damage to the liver and kidneys, increased blood pressure, and cardiovascular risks.

Prison doctors do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment. *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("[N]othing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment.").There is no evidence that Dr. Esch declined to provide the medications Plaintiff wanted because she wanted to punish him or because she was apathetic about his well-being. Rather, Dr. Esch declined to provide the medications because, in her medical judgment, it was not in Plaintiff's best interest for him to receive them.

The fact that Plaintiff had a prescription from another physician for these medications does not establish that Dr. Esch acted with deliberate indifference. *See Davis v. Norris*, 198 F.3d 249 (8th Cir 1999) (unpublished) ("The summary judgment record ... shows that while one examining dentist had recommended a root canal, another had recommended extraction. Thus, the record shows only a disagreement over a particular type of dental procedure."); *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995) (affirming grant of summary judgment in favor of defendants where

plaintiff "has proved nothing more than a disagreement as to the proper course of treatment, which is not actionable under the Eighth Amendment."); *Steele v. Weber,* 278 Fed. App'x 699, 700 (8th Cir. 2008) (unpublished) (holding that prison doctors who refused to provide high-dose narcotic medication prescribed by outside physicians based on their medical judgment that medication was harmful to inmate did not act with deliberate indifference).

While Dr. Esch did not provide Plaintiff the specific medications he desired, she did not act with indifference to his condition. Dr. Esch saw Plaintiff on several occasions, and she and other medical providers at the Douglas County Jail provided him with NSAIDs for his pain. Dr. Esch also provided Plaintiff with a walker to assist his movements and, later, a wheelchair after he requested one. When Plaintiff continued to complain about his pain, Dr. Esch took steps to ensure that he receive a prescription-level medication for pain management (Cymbalta) and then increased the dosage when Plaintiff continued to complain about his pain after receiving it. Plaintiff's requests for an oxygen tank for use at night were denied because tests of his oxygen levels were consistently normal and Plaintiff declined to have his oxygen levels tested while sleeping.

The Eighth Circuit has held that prison medical professionals do not act with deliberate indifference where, as here, they do not ignore a prisoner's complaints but exercise independent medical judgment and attempt to treat them in a manner other than the precise manner the prisoner requests. *See Logan v. Clarke,* 119 F.3d 647, 649-50 (8th Cir. 1997) (prison doctors were not deliberately indifferent where they treated prisoner on numerous occasions and offered sensible medication and treatment); *Allard v. Baldwin,* 779 F.3d 768, 772 (8th Cir. 2015) (granting summary judgment to medical defendants who did not ignore inmate's complaints but saw inmate on several occasions and tried numerous treatments).

### B. Dr. Esch did not act with deliberate indifference by not directing that Plaintiff receive surgery on his hip.

Plaintiff has also suggested that Dr. Esch should have directed that Plaintiff receive surgery on his hip, but, again, the evidence does not support a finding of deliberate indifference in this regard. A defendant does not act with deliberate indifference when, in an exercise of her professional judgment, she concludes that an inmate will not be placed at risk by foregoing a particular course of treatment, including surgery. *See, e.g., [Jenkins v. Cnty. of Hennepin, Minnesota, 557 F.3d 628, 632 (8th Cir. 2009)](link)* (holding defendant who decided to postpone X-ray based on medical judgment that injury was not urgent entitled to summary judgment); *[Reid v. Sapp, 84 Fed. App'x 550, 552 (6th Cir. 2003)](link)* (unpublished) holding that doctor was entitled to summary judgment because he determined that surgery was not the best alternative and mere difference in medical opinion did not rise to the level of cruel and unusual punishment); *[Taylor v. Dutton, 85 F.3d 632 (7th Cir. 1996)](link)* (Table) (unpublished) (finding prison officials who refused to have surgery performed on plaintiff's torn ACL were entitled to summary judgment because there was no evidence they were aware of an excessive risk to the inmate's health and failed to act on that knowledge); *[Dieteman v. Cnty of Lancaster, 2015 WL 8334994, at \*5 (D. Neb. Dec. 8, 2015)](link)* (holding that even if prison doctor believed inmate had an ACL injury, he did not act with deliberate indifference by declining to direct that the inmate receive surgery).

The decision of whether to direct that an inmate receive surgery is particularly complicated when the inmate is a pretrial detainee like Plaintiff. Many courts have recognized that correctional officials and physicians may consider the fact that pretrial detainees might be released or transferred to another facility with little warning when deciding whether surgery is an appropriate treatment option. *See, e.g., [Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987)](link)* (pointing out "general expectation that pretrial incarceration is to be relatively brief" and explaining that local governments may delay surgery believed to be elective until after detainee has been released or

confined as convicted criminal); *Martin v. Bowman*, 48 F.3d 1216 (4th Cir. 1995) (Table) (unpublished) (holding that decision not to authorize elective knee surgery was not deliberate indifference because plaintiffs "were pretrial detainees who at any time during their detention could have been released or transferred to another facility with little warning"); *Missouri v. Spivey*, 2014 WL 4349151, at *10 (D.S.C. Aug. 29, 2014) (decision not to refer plaintiff to orthopedist was not deliberate indifference because inmate's status as a pretrial detainee is a "relevant consideration").

Dr. Esch did not direct that Plaintiff receive surgery on his hip, but there is no evidence that she did so under the belief that deferring surgery would present risks to Plaintiff's health or that she intentionally disregarded this alleged need. Not only is there no evidence that Dr. Esch believed that Plaintiff's health was being placed in jeopardy by deferring surgery, there is evidence suggesting it was reasonable for Dr. Esch to conclude that Plaintiff's hip did not require immediate surgery. A few weeks prior to his incarceration at the Douglas County Jail, Plaintiff visited an orthopedic surgeon who informed him that he would not perform surgery on Plaintiff's hip until Plaintiff quit smoking. Plaintiff did not agree to go forward with the surgery, deciding that he needed to first consider whether he was willing to quit smoking. The doctor's decision to make surgery contingent on Plaintiff quitting smoking and Plaintiff's decision to put off surgery, so that he could consider whether to quit smoking was reflected in his medical records, which Dr. Esch reviewed.

### *IV. CONCLUSION*

Plaintiff cannot prove that Dr. Esch was deliberately indifferent to his serious medical needs. The evidence establishes that Dr. Esch was attentive to Plaintiff's complaints of pain and properly exercised her medical judgment in providing treatment and in not authorizing surgery.

IT IS THEREFORE ORDERED:

1. Defendant's Motion for Summary Judgment (Filing No. 30) is granted.

2. All claims alleged against Defendant Esch in her individual capacity are dismissed with prejudice.

3. Judgment shall be entered by separate document.

DATED this 9th day of November, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge